# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ASSASSINATION ARCHIVES AND RESEARCH CENTER, INC.** <br><br> Plaintiff, <br><br> v. <br><br> **CENTRAL INTELLIGENCE AGENCY** <br><br> Defendant. | Case No. 1:17-cv-00160 (TNM) |

## MEMORANDUM OPINION

After Assassination Archives and Research Center ("Assassination Archives") sued to enforce its Freedom of Information Act ("FOIA") request, the Central Intelligence Agency released a document that has been publicly available since 2000, but with 96 words and a cover page newly unredacted. The litigation was neither protracted nor complex, but Assassination Archives now seeks attorney's fees of nearly $1,000 per word added to the public domain. The Magistrate Judge's Report and Recommendation ("Report") recommends denying Assassination Archives' request for fees. Over Assassination Archives' objections, the Court will accept the Report and deny Assassination Archives' motion for attorney's fees.

## I.

Through an original and amended FOIA request, Assassination Archives sought records about any plots to assassinate Adolf Hitler, including the CIA's study of such plots in 1963 for plans to overthrow Fidel Castro. *See* Compl., Ex. 2 at 1, ECF No. 1-2. Assassination Archives also sought all records relating to Allen Dulles's communications about such plots during his service in the CIA or its predecessors. *Id.* The factual background of the case is more fully set forth in the Report. *See* Report at 1–4, ECF No. 35.

After Assassination Archives sued, the CIA released a document titled "Propagandist's Guide to Communist Dissensions" ("Propagandist's Guide") and five records related to its search for responsive records.[1] *See* Shiner Decl. ¶¶ 3–4, ECF No. 31-5. The parties filed cross-motions for summary judgment, and this Court granted the CIA's motion and denied Assassination Archives' motion. *See Assassin'n Arch's & Res'rch Ctr., Inc. v. CIA*, 317 F. Supp. 3d 394, 405 (D.D.C. 2018) ("*Assassin'n Arch's I*"). But because the CIA had disclosed the Propagandist's Guide during the litigation, Assassination Archives moved for attorney's fees and costs, totaling $103,858.00. Pl.'s Mot. for Fees at 16, ECF No. 30; Pl.'s Reply for Fees ("Pl. Reply") at 19, ECF No. 32. The case was referred to Magistrate Judge Harvey for full case management, and his Report recommends denying Assassination Archives' fee request. Report at 15. Assassination Archives objects.

## II.

When a party objects to a magistrate judge's Report, the Court reviews *de novo* any part of the magistrate judge's disposition to which a party properly objects. Fed. R. Civ. P. 72(b)(3). The district court may then "accept, reject, or modify the recommended disposition." *Id*.

Courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The attorney fee inquiry is divided into "eligibility" and

---

[1] The Propagandist's Guide has been publicly available since 2000. Shiner Decl. ¶ 3, ECF No. 31-5. But the version produced by the CIA includes a newly unredacted cover page and this passage:
> The facts, however, are not always known or easy to know, particularly when they are not even accurately reported. The French Press Agency (AFP) for example distorted SEATO Secretary General Konthi's remarks on Vietnam to suit the interests of French government policy and has on several occasions slanted its reporting on South Vietnam to cause confusion and misunderstanding . . . slipping controls. As is usual with Communists in trouble, the Kremlin is radiating comparative sweetness and reason. And much of the Free World is reacting with a wave of wishful speculation that the Soviets may be changing their stripes.

*See id.* at 17–20. Thus, the CIA disclosed little new information to the public and that information was largely irrelevant to Assassination Archives' FOIA request.

"entitlement" prongs. *See Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006). "The eligibility prong asks whether a plaintiff has substantially prevailed and thus may receive fees." *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011) (internal quotation marks omitted). To "substantially prevail," a plaintiff must show that he has obtained relief through a judicial order or "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii); *see also Brayton*, 641 F.3d at 524–25.

If a plaintiff is eligible for fees, courts consider four factors to determine whether it has a right to fees: "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013) ("*Morley 2013*"). "No one factor is dispositive." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008). The "sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1094 (D.C. Cir. 1992).

### III.

#### A.

Assassination Archives raises three objections to the Report. Assassination Archives first objects to the Report's reasoning in the four-factor entitlement analysis. It alternatively argues that the Court should abandon the four-factor test because it does not follow the plain language of FOIA. But Assassination Archives' arguments are unpersuasive, and the Court accepts the Report's recommendation denying Assassination Archives attorney's fees.

First, Assassination Archives complains that the Report undervalued the public benefit from its request. *See* Pl.'s Obj. to Report ("Pl. Obj.") at 7–9, ECF No. 36. Evaluating the public

benefit factor "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy*, 550 F.3d at 1159. Viewed solely afterward, Assassination Archives' request required a significant expenditure of federal resources with scant payoff for the public. From this perspective, a request for attorneys' fees is highly unwarranted. But the "effect of the litigation inquiry" asks "simply whether the litigation caused the release of requested documents, without which the requester cannot be said to have substantially prevailed." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016) ("*Morley 2016*").[2]

In any event, the public benefit analysis mainly requires an *ex ante* assessment of "the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Id.* To have "potential public value" the request "must have at least a modest probability of generating useful new information about a matter of public concern." *Id.* The public benefit factor weighs in a complainant's favor "where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979) (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978)).

Assassination Archives sought records related to plots to assassinate Hitler and the CIA's later study of those plots related to overthrowing Castro. Assassination Archives claims the potential public benefit of its FOIA request is strong because it is related to the assassination of President Kennedy. *See* Pl.'s Obj. at 7–8. Not so.

While "showing potential public value is relatively easy" for FOIA requests about the

---

[2] Even so, the fact that almost all the substantive document was "already in the public domain is significant because it undermines any claim that the requester's use of FOIA ha[s] provided public access to the documents." *Morley 2016*, 810 F.3d at 845.

4

Kennedy assassination, "a requester's mere *claim* of a relationship to the assassination" does not "*ipso facto* satisf[y] the public interest criterion." *Morley 2016*, 810 F.3d at 844 (emphasis in original). And Assassination Archives' request is "two assassinations removed from the assassination of President Kennedy." *Assassin'n Arch's I*, 317 F. Supp. 3d at 404. Assassination Archives relies on the "theory that the Kennedy assassination was motivated by U.S. efforts to assassinate Fidel Castro, efforts that prompted the CIA to study assassination attempts on Adolf Hitler." *Id.* Even if Assassination Archives' proposed chain of events is true, the requested documents are only "tenuously related to President Kennedy's assassination." *Id.* Assassination Archives is trying to shoehorn a tangential inquiry into established precedent.

True, Assassination Archives' request does have some relation to the CIA's potential plots to assassinate Castro. And a plot to assassinate a foreign leader such as Castro is a matter of potential public value. *See* Report at 8 (citing *Morley 2016*, 810 F.3d at 845). Even so, information about a never-implemented assassination plot that Congress investigated over 40 years ago is only marginally "likely to add to the fund of information that citizens may use in making vital political choices." *Fenster*, 617 F.2d at 744. While there is some potential public value in information about a Castro assassination attempt, it is not strong.

More, Assassination Archives' FOIA request led to a document that was largely in the public domain already. In *Tax Analysts*, the district court found minimal public benefit in the release of documents that were already publicly available. *Tax Analysts v. U.S. Dep't of Justice*, 759 F. Supp. 28, 30 (1991). Most important to its determination was the fact that "even prior to the institution of this litigation, the public had the benefit of access to all or most of this information." *Id*. The D.C. Circuit affirmed, noting that it was within the district court's discretion to consider the "key countervailing point" that the requested documents were already

in the public domain. *Tax Analysts*, 965 F.2d at 1094–95. The public also had the benefit of access to most of the Propagandist's Guide before litigation began. In both cases, information already in the public domain was unlikely to assist in "making vital political choices." On balance, then, the public benefit factor weighs only slightly in Assassination Archives' favor.

**B.**

Assassination Archives next alleges that the Report wrongly found that the second and third factors weigh only marginally in favor of awarding attorney's fees. Pl.'s Obj. at 8–9. These factors, often considered together, "assess whether a plaintiff has sufficient private incentive to seek disclosure without attorney's fees." *Davy*, 550 F.3d at 1160 (internal quotation marks omitted). When a FOIA requester "seeks disclosure for a commercial benefit or out of other personal motives, an award of attorney's fees is generally inappropriate." *Tax Analysts*, 965 F.2d at 1095. "[R]equesters who seek documents for public informational purposes," however, "engage in the kind of endeavor for which a public subsidy makes some sense." *Davy*, 550 F.3d at 1160.

Assassination Archives is a nonprofit entity. It argues that the analysis should go no further: because Assassination Archives is a nonprofit entity and the requested documents serve no commercial interest, the second and third factors should weigh strongly in favor of granting attorney's fees. Pl. Obj. at 9; *see also* Pl.'s Reply to Def.'s Resp. ("Pl. Reply Obj.") at 7–8, ECF No. 40. But its status as a nonprofit entity serving the public interest is not dispositive.

Organizations that serve the public interest, like news organizations, are not *ipso facto* entitled to have the second and third factors weighed in their favor, even though "their activities often aim to ferret out and make public worthwhile, previously unknown government information." *Davy*, 550 F.3d at 1160. In fact, "Congress left to the discretion of district courts

6

the judgment on whether to award attorney's fees even to news organizations, leaving open the possibility that in some circumstances news organizations might not be entitled to fees." *Tax Analysts*, 965 F.2d at 1096. So the Court looks beyond Assassination Archives' nonprofit status to determine whether the second and third factors should weigh toward awarding fees.

The CIA argues that Assassination Archives received a private benefit by avoiding the effort and expense of searching the National Archives for responsive records. Def. Opp'n to Fees at 7–8, ECF No. 31. Under the second and third factors, an interest need not be "strictly commercial" to weigh against granting attorney's fees; "any private interest will do." *Tax Analysts*, 965 F.2d at 1095.

True, the D.C. Circuit has suggested that the private interest of avoiding a search of the National Archives might not always count against finding attorney's fees. In *Morley 2016*, the D.C. Circuit asked the district court to consider whether the "laborious and unreliable process" of locating certain files in the National Archives might "militate against denial of fees for such documents." *Morley 2016*, 810 F.3d at 845. On remand, the district court found that the second and third factors weighed neither in favor nor against an award of attorney's fees when the requester received the private benefit of not having to search the National Archives. *Morley v. CIA*, 245 F. Supp. 3d 74, 78 (D.D.C. 2017) ("*Morley 2017*"), aff'd, 894 F.3d 389, 391 (D.C. Cir. 2018) ("*Morley 2018*").

Like *Morley 2017*, the private incentives in Assassination Archives' search are small, "but so [is] the expectation-adjusted public benefit." *Id.* It is also a "very close call" here "whether taxpayers should provide an exogenous incentive for a request" like this one. *Id.* But because the CIA did not object to the Report's finding on the second and third factors, the Court will assume these factors support attorney's fees, though only marginally.

7

Assassination Archives also objects to the Report's finding that the fourth factor—the reasonableness of the CIA's conduct—weighs against a fee award. *See* Pl.'s Obj. at 4–7. But Assassination Archives' argument lacks merit. The fourth factor asks not whether "the agency acted correctly" but "'whether the agency has shown that it had any colorable or reasonable basis for not disclosing' the relevant material." *Morley 2018*, 894 F.3d at 394 (quoting *Davy*, 550 F.3d at 1163). It also considers whether the agency was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162 (internal quotation marks omitted).

Assassination Archives complains that the CIA's failure to release responsive records until litigation had begun raises "important questions as to [the] CIA's performance of its FOIA obligations" that the agency has not adequately explained. Pl.'s Obj. at 4–5. But Assassination Archives raised these issues at the summary judgment stage, *see* Pl.'s Cross-Mot. for Summ. J. at 18–20, ECF No. 21, alleging that the CIA's pre-litigation conduct raised "troubling questions as to the conduct of the search," *Assassin'n Arch's I*, 317 F. Supp. 3d at 401. The Court still found that the CIA had "met its burden of demonstrating a systematic good faith search effort," "the presumption of good faith stands unrebutted, and that the CIA has established the adequacy of its search beyond any genuine dispute." *Id.* (internal citation omitted).

Assassination Archives then raised the same arguments on appeal. *See* Appellant Resp. in Opp'n to Summ. Affirm. at 5–6, *Assassin'n Arch's & Res'rch Ctr. v. CIA*, No. 18-5280, 2019 WL 691517 (D.C. Cir. Feb. 15, 2019) ("*Assassin'n Arch's II*") ("[T]wo searches conducted during the administrative phase of the case found no documents, yet a third search conducted after Assassination Archives filed suit did find responsive records, thus raising the important issue of the adequacy of CIA's searches."). The D.C. Circuit summarily rejected this argument.

8

*Assassin'n Arch's II*, 2019 WL 691517 at *1 (holding that the CIA's search was adequate).

More, the reasonableness of the CIA's conduct is not undercut by the fact that its first two searches came up empty. Yes, the CIA provided erroneous letters during the search process. But these administrative errors are not evidence of bad faith. "It would be unreasonable to expect even the most exhaustive search to uncover *every* responsive file; what is expected of a law-abiding agency is that it admit and correct error when error is revealed. *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986) (emphasis in original). "[T]he additional releases suggest 'a stronger, rather than a weaker, basis' for accepting the integrity of the search." *Id.* (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981)).

The CIA began more searches despite finding nothing at first, which shows a good-faith effort. The reasonableness of the CIA's conduct is also evidenced by the fact that after extensive searching, the agency turned up only a single document, not a deluge of responsive records. That the CIA found the needle after searching the haystack a third time does not alter the Court's prior opinion that the agency met its burden to establish a systematic good-faith search effort.

Assassination Archives also objects to the Report's finding that the CIA's referral to the National Archives was reasonable. Pl.'s Obj. at 5–6. The Report suggests that even if the CIA had referred Assassination Archives to the National Archives for its entire FOIA request, "that would not in itself show Defendant acted unreasonably." Report at 12. It notes that it was "at least reasonable for the CIA to believe that [the plaintiff's] request as phrased would lead only to records that the agency had already gathered and produced to the Archives." Report at 13 (quoting *Morley 2018*, 894 F.3d at 395–96).

To be sure, "an agency has [] 'withheld' a document under its control when, in denying an otherwise valid request, it directs the requester to a place outside of the agency where the

document may be publicly available." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150 (1989). Assassination Archives correctly argues that the Report should not be too reliant on *Morley 2018*. The CIA's action here took place after the D.C. Circuit ruled that agencies could not respond to FOIA requests by simply referring the requester to the National Archives. *See* Pl. Obj. at 6 (citing *Morley v. CIA*, 508 F.3d 1108, 1120 (D.C. Cir. 2007) ("*Morley 2007*")).

The CIA must search its records, and the CIA would have unreasonably "withheld a document under its control," if it had referred Assassination Archives to the National Archives for the entirety of its request. But that is not what happened here.

The CIA referred Assassination Archives to the National Archives only for the items in the FOIA request the CIA no longer had in its possession. The portion related to "communications during [Dulles's] service with the OPC and the OSS." *See* Compl, Ex. 3 at 1, ECF No. 1-3. Unlike in *Morley 2007*—where the CIA "d[id] not deny that its ha[d] retained copies of the records transferred to the [National Archives]," 508 F.3d at 1119—the CIA maintains that when it accessioned its predecessor organizations' records to the National Archives, "it did not keep copies that could be searched." *See* Def. Resp. to Pl.'s Obj. at 8, ECF 39. Indeed, the Report observed that the Propagandist's Guide did not come from either of those predecessor organizations. Report at 12.

The Magistrate Judge appropriately reasoned that the CIA's "referral of [Assassination Archives] to the National Archives for materials related to OPC and OSS . . . is not evidence of obduracy." *Id.* As the Court has already held, and the D.C. Circuit has summarily affirmed, the CIA's conduct was reasonable. The fourth factor thus weighs strongly against awarding attorney's fees.

Assassination Archives also alleges that the Report incorrectly gave dispositive weight to

the fourth factor, even though "no one factor is dispositive." Pl. Obj. at 3 (citing *Davy*, 550 F.3d at 1159). It suggests the Report "follows in the wake of the decision in [*Morley 2018*] and elevates the fourth factor to a controlling status"—a "misapplication of the case law."[3] *Id.* at 3–4 (citing *Davy*, 550 F.3d at 1159). Not so.

In any event, *Morley 2018* and *Davy* are not inconsistent. While *Davy* holds that "no one factor is dispositive," it still requires a balancing of the factors. There, a "balancing of the factors [could] only support the conclusion that Davy [wa]s entitled to an award of attorney's fees" because "no factor weigh[ed] in the agency's favor." *Davy*, 550 F.3d at 1163. *Morley 2018* similarly requires balancing the factors and finds that "when the four factors point in different directions, the district court has very broad discretion in deciding how to balance those factors and whether to award attorney's fees." *Morley 2018*, 894 F.3d at 391. Thus, no factor is *dispositive*, but courts will determine the appropriate balance in a given case.

Here, as in *Morley 2018*, the four factors are mixed. Since the "sifting of [the four factors] over the facts of a case is a matter of district court discretion," *Tax Analysts*, 965 F.2d at 1094, this Court must assign weights to the factors. And "when the first three factors favor the plaintiff but the fourth does not," as here, "a district court retains very broad discretion under the four-factor test about how to balance the factors and whether to award attorney's fees." *Morley 2018*, 894 F.3d at 397.

The first three factors may weigh in Assassination Archives' favor, but only slightly. In contrast, the fourth factor weighs strongly in the CIA's favor. The CIA made repeated efforts to search the haystack only to find a single document, most of which was already public. This

---

[3] It is ironic that Assassination Archives criticizes the Report for purportedly ignoring precedent while also encouraging this Court to abandon the long-established four-factor test for entitlement to attorney's fees. *See* Pl. Obj. at 10–11; *see also* Pl. Reply at 12-13.

11

strongly favors finding CIA's conduct reasonable, and there are no mitigating facts to lessen this finding that the D.C. Circuit has summarily affirmed. After sifting the four factors and the evidence, the Court finds the fourth factor carries the most weight here with its strong finding in favor of the CIA. So while Assassination Archives is eligible for attorney's fees, it is not entitled to them.

## C.

Finally, Assassination Archives argues that the four-factor test is a "legal relic" that does not track FOIA's plain language. Pl. Obj. at 11; *see also* Pl. Reply Obj. at 12–13. True, some judges on the D.C. Circuit have signaled a willingness to abandon the four-factor entitlement test. *See Morley 2013,* 719 F.3d at 690 (Kavanaugh, J., concurring) ("We should ditch the four-factor standard."); *see also Davy*, 550 F.3d at 1166 (Randolph, J., dissenting). But if the D.C. Circuit is moving away from the four-factor test, it is not necessarily headed toward a test helpful to Assassination Archives: "it is arguable that the fourth factor alone should constitute the test under FOIA for attorney's fees." *Morley 2018*, 894 F.3d at 405 n.1. And here the fourth factor favors the CIA.

In any case, this Court cannot overturn the four-factor test. It is bound by the test "until either the Circuit, sitting en banc, or the Supreme Court, overrules it." *Brookens v. Acosta*, 297 F. Supp. 3d 40, 47 (D.D.C. 2018) (cleaned up) (quoting *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997)). The Court declines Assassination Archives' invitation to ignore binding precedent and stands by the four-factor test.

**IV.**

For these reasons, the Court will accept the Recommendation of the Magistrate Judge and deny Assassination Archives' Motion for Attorney's Fees. A separate order will issue.

Dated: April 4, 2019                                       TREVOR N. McFADDEN, U.S.D.J.